IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00550-PAB

ZACHARY C. RHODES,

      Applicant,

v.

ANGEL MEDINA, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254
_____

      This matter is before the Court on Petitioner Zachary C. Rhodes' pro se

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("the Petition")

challenging the validity of his conviction and sentence in Case No. 02CR2008 in the

Arapahoe County District Court of Colorado.  Remaining for disposition on the merits

are Petitioner's first, fourth, fifth and sixth claims.  Respondents have filed an Answer to

those claims, and the Petitioner filed a Traverse.  Having considered the same, along

with the state court record,[1] the Court concludes that the Petition should be denied.

_____

      [1]The state court record in Arapahoe District Court Case No. 02CR2008 consists
of two CD-ROMs that contain the state court pleadings and hearing and trial transcripts,
and sealed envelopes containing the original trial court exhibits.  For ease of reference,
the hearing and trial transcripts will be cited in this Order as "Hearing Tr." and "Trial Tr.,"
preceded by the applicable date.

## I.      Background

On August 1, 2003, Petitioner was convicted by a jury of first degree burglary and menacing in the District Court for Arapahoe County, Colorado ("the trial court"). State Court R., August 1, 2003 Hearing Tr., at 3-4.  Following a court trial and conviction on four habitual criminal charges, the trial court sentenced Petitioner on August 6, 2004 to a sixty-four year prison term for the burglary conviction and a concurrent twelve year term for the menacing conviction.  State Court R. vol. 2, at 244; August 6, 2004 Hearing Tr. at 93.  The Colorado Court of Appeals affirmed Petitioner's convictions on direct appeal in *People v. Rhodes* (*Rhodes I*), No. 04CA1890 (Colo. Ct. App. May 31, 2007) (unpublished opinion), Respondents' Pre-Answer Resp. Ex. D. at 2-4.  The Colorado Supreme Court denied Petitioner's request for certiorari review on September 17, 2007.  *Id.*, Ex. F.

Petitioner filed a motion for post conviction relief pursuant to Colo. Crim. P. Rule 35(c) on August 12, 2008, which the trial court denied on December 2, 2008.  The Colorado Court of Appeals affirmed the trial court's order on appeal in *People v. Rhodes* (*Rhodes II*), No. 09CA0069 (Colo. Ct. App. Jan. 28, 2010) (unpublished decision).  Pre-Answer Resp. Ex. L.

Petitioner asserted seven claims in his original Application.  Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents conceded that the Application was timely, but argued that claims two, three, five, six and seven were not exhausted and were

procedurally defaulted.  The Court agreed as to claims two, three and seven and dismissed those claims as procedurally barred from federal habeas review.  *See* April 28, 2010 Order to Dismiss in Part.   The Court further found, however, that Applicant exhausted state remedies for claims one, four, five and six.  Claims one, four, five and six of the Application were drawn to a District Judge and to a Magistrate Judge.  *Id.* The Court reviews the merits of those claims below.

## II.    Standard of Review

The Court must construe the Petition and other papers filed by Petitioner liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, the Court should not be an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore,

clearly established law consists of Supreme Court holdings in cases where the facts are

at least closely-related or similar to the case sub judice.  Although the legal rule at issue

need not have had its genesis in the closely-related or similar factual context, the

Supreme Court must have expressly extended the legal rule to that context.  *House v.*

*Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a

clearly established rule of federal law is implicated, the Court must determine whether

the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

A state court decision is contrary to clearly established federal law if: (a) the state

court "'applies a rule that contradicts the governing law set forth in [Supreme Court]

cases'"; or (b) "'the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [that] precedent.'"  *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir.

2006) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly

understood to mean 'diametrically different,' 'opposite in character or nature,' or

'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established

federal law when it identifies the correct governing legal rule from Supreme Court

4

cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply. *House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

Finally, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999); *see also Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (reconfirming "that

§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits.").

III.    **Legal Analysis**

A.    **Claim One**

Petitioner asserts in his first claim for relief that there was insufficient evidence to support his conviction for first degree burglary because the prosecution failed to prove the statutory element that he entered M.T.'s apartment unlawfully or remained there unlawfully.  Petitioner argued in his opening brief to the Colorado Court of Appeals that he had implicit permission from M.T. to enter and remain in M.T.'s apartment based on the following evidence:  M.T. opened the door to the apartment in response to C.B.'s knock; M.T. allowed Petitioner inside and did not thereafter ask Petitioner to leave; M.T. assisted the Petitioner by instructing C.B. to "tell [Petitioner] where his sister's at"; and, when a neighbor knocked on M.T.'s door after hearing a gunshot, M.T. told the individual that everything was "all right" inside.  Pre-Answer Resp. Ex. B at 12-13.

The Petitioner's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*  at 319 (emphasis in the original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court "may not weigh conflicting evidence nor consider the credibility of

6

witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). The Court considers all of the evidence presented at trial, including Petitioner's own testimony, in determining the sufficiency of the evidence to support the verdict. *See Jackson*, 443 U.S. at 319; *accord United States v. Megallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (citing *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001)).

In applying *Jackson*, the Court looks to Colorado law to determine the substantive elements of the offense. *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). Under Colorado law, a person commits first degree burglary when that person:

> knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass . . . against another person or property, and if in effecting entry or while in the building or occupied structure. . . the person or another participant in the crime assaults or menaces any person, or the person or another person is armed with explosives or a deadly weapon.

Colo. Rev. Stat. § 18-4-202(1) (2010). Pursuant to Colo. Rev. Stat. § 18-4-201(3), "[a] person 'enters unlawfully' or 'remains unlawfully' in or upon premises when the person is not licensed, invited, or otherwise privileged to do so."

The Colorado Court of Appeals resolved Petitioner's challenge to the sufficiency of the evidence pursuant to a state law standard that is substantially identical to the *Jackson* standard, *see Rhodes I*, Pre-Answer Resp. Ex. E at 5, and rejected Petitioner's claim based on the following reasoning:

Defendant contends that he could not be convicted of entering or remaining in the apartment unlawfully because (1) M.T. did not ask defendant to leave; and (2) M.T. told the neighbor shortly after the gun discharged that everything was "all right."  We disagree.

There was evidence that M.T. opened the door in response to the knock, but there is no evidence that he gave defendant permission to enter into his apartment.  Thus, a jury could find that defendant entered the apartment without M.T.'s permission and was not licensed, invited, or otherwise privileged to enter.

The evidence also supports a finding by a reasonable person that even if defendant had M.T.'s permission to enter the apartment, this permission was implicitly withdrawn once defendant pointed the gun at M.T. and then remained in the apartment unlawfully.  Any permission was also explicitly withdrawn once M.T. told defendant to leave.  See Cooper v. People, 973 P.2d 1234, 1241 (Colo. 1999) (a defendant may be convicted of second degree burglary if he or she entered lawfully but subsequently remained unlawfully with the intent to commit a crime therein); disapproved of on other grounds by Griego v. People, 19 P.3d 1 (Colo. 2001); People v. Ager, [928 P.2d 784 (Colo. App. 1996)].

Thus, the evidence viewed as a whole and in a light most favorable to the People, was sufficient to support a conclusion by a reasonable person that defendant unlawfully entered or remained unlawfully after a lawful entry, with intent to commit a crime in the apartment.  See People v. Ager, supra.

Id. at 6-7.

The events leading up to Petitioner's arrival at the burglary location were

accurately summarized by the Colorado Court of Appeals as follows:

In July 2001, defendant and co-defendant (whose trial was severed from defendant's) were searching for defendant's sister. . . Defendant received information that his sister was seen that day with C.B., his sister's friend, and that she had been injured in the eye and mouth and needed medical attention.  Defendant called C.B. and asked her to accompany them in the search.

C.B. suggested they try several apartments of friends who knew defendant's sister. . . .  En route, defendant stopped by his own home to "get some heat," which C.B. testified meant defendant wanted to get a gun.  Defendant admitted taking a gun with him in the search for his sister.

8

> [The search proved unsuccessful and] Defendant, who had grown increasingly angry at their lack of success, told C.B. that she had "taken" his sister from him and that she could not leave until they found her.
>
> At one of the apartment buildings, C.B. heard defendant whisper to co-defendant that he wanted to "knock this bitch off."  Co-defendant told C.B. to "be nice" to defendant because defendant was thinking of "taking her out."
>
> They eventually arrived at the apartment of M.T.  Defendant and C.B. provided substantially different testimony as to what transpired next.

*Rhodes I*, Pre-Answer Resp. Ex. D. at 2-4.

Menacing victim C.B. testified that immediately before she knocked on burglary victim M.T.'s door, Petitioner showed her his gun and threatened to hurt her because she was unable to find his sister.  State Court R. July 29, 2003 Trial Tr. at 76-77.  C.B. further testified that Petitioner stood beside her as she knocked on M.T.'s door, entered the apartment with her when M.T. opened the door without being invited in, pushed her onto the couch, told her to shut up, threatened to "pistol whip" her, and then hit her on the head with his gun, splitting her head open.  *Id.* at 78-79.  Petitioner then pointed the gun at C.B.'s head and shot it six times, but it misfired.  *Id.* at 79-81.  C.B. testified that when she asked M.T. "are you going to stand there and watch him kill me?", M.T. responded, "tell [Petitioner] where his sister's at."  *Id.* at 84.  After deciding not to be "tormented any more," C.B. stood up and started walking toward the door.  *Id.* at 85. Petitioner grabbed her and accidentally dropped the gun, at which point they both struggled to get control of it.  The gun fired but did not hit C.B.  *Id.* at 86-87.  A neighbor knocked on the door, and M.T. reassured him that "everything all right in here."  *Id.* at 88.  According to C.B., Petitioner then said, "I'm going to knife the bitch to death" and

went into the kitchen to get a knife. *Id.* at 88.  C.B. ran out of the apartment to a neighbor's house and called 911. *Id.* at 88-89.

Petitioner argues that the above evidence establishes that Petitioner had implicit permission to enter and remain in M.T.'s apartment.  Although the trier of fact could reasonably have made that inference based solely on C.B.'s testimony, that was not the only reasonable inference the jury could have drawn.  The evidence could also support, based on C.B.'s testimony, a finding by a rational jury that Petitioner was not invited to enter the apartment, but rather came inside before M.T. had a chance to say anything to him and, given that Petitioner then immediately pulled out a gun, deterred M.T. from objecting to Petitioner's entry. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008) (federal habeas review under the *Jackson* standard is "sharply limited,"; a court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (internal quotation marks and alterations omitted).  Accordingly, C.B.'s testimony is arguably sufficient to support the element of unlawful entry under Colorado law. *See Ager*, 928 P.2d at 790 (rejecting defendant's challenge to his second degree burglary conviction for lack of evidence of unlawful entry where defendant knocked on door of victim's trailer and assaulted the victim immediately after the victim opened the door, entered the trailer and continued to assault victim inside the trailer).

Moreover, even if Petitioner had implicit permission to enter the apartment, the state court record supports the Colorado Court of Appeals' determination that such permission was withdrawn once Petitioner pulled a gun on M.T. and M.T. ordered him

10

to leave.  Petitioner testified at trial to the following version of events:  After he entered M.T.'s apartment and M.T. told him that he did not know the whereabouts of Petitioner's sister, Petitioner did not believe M.T. and searched M.T.'s apartment.  *Id.* at 175-76.  M.T. told Petitioner again that he had not seen Petitioner's sister and that he did not "give a f— where your sister is."  *Id.* at 176.  Petitioner was angered by M.T.'s remark, pulled a gun out of his waistband, and said to M.T., "Now do anybody give a f— about where my sister at."  *Id*. at 176, 183.  C.B. then charged at Petitioner, knocking the gun out of his hand.  *Id.*  Petitioner testified that he and C.B. wrestled for the gun and it discharged accidentally.  *Id.* at 176-179, 183.  While Petitioner and C.B. were wrestling for the gun, and before the gun went off, M.T. told Petitioner to get out of his apartment, but Petitioner continued to struggle with C.B. for the gun.  *Id.* at 183.

Viewed in a light most favorable to the prosecution, a rational jury could have concluded beyond a reasonable doubt, based on the evidence as a whole, that Petitioner remained unlawfully in M.T.'s apartment, even if Petitioner was given permission to enter originally.  The Court therefore finds that the state appellate court reasonably applied the *Jackson* standard in determining that there was sufficient evidence presented at Petitioner's trial to support Petitioner's conviction for first degree burglary.  *See Ager*, 928 P.2d at 790 (rejecting defendant's challenge to his second degree burglary conviction for lack of evidence of unlawfully remaining in an occupied structure where defendant assaulted the victim as he entered the victim's trailer and continued to assault the victim inside the trailer).  Petitioner is not entitled to federal habeas relief on his first claim.

B.     **Claim Four**

Petitioner asserts in claim four that his Sixth Amendment right to trial by jury and

his Fourteenth Amendment due process rights were violated when he was convicted by

the trial court of four habitual criminal counts[2] and the court imposed a sentence four

times greater than he otherwise would have received.  Petition at 6a.

In *Apprendi v. New Jersey*, 530 U.S. 455, 490 (2000), the Supreme Court held

that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt."  The Court's exclusion of prior convictions from the

general rule was based on its prior decision in *Almendarez-Torres v. United States*, 523

U.S. 224 (1998), which held that recidivism need not be charged in an indictment in

order for a judge to use prior convictions to enhance a defendant's sentence.  *Apprendi*,

530 U.S. at 487-88.  The *Apprendi* Court mentioned the possibility that

*Almendarez-Torres* may have been "incorrectly decided."  *Apprendi*, 530 U.S. at 489.

However, the Supreme Court has not overruled *Almendarez-Torres.  See e.g. United*

*States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception

announced in *Apprendi* ).  Petitioner does not allege that his sentence was enhanced

on any basis other than the fact of his prior convictions so as to implicate the rule of

*Apprendi.*

The Colorado Court of Appeals resolved Petitioner's claim as follows:

We also reject defendant's contention that the habitual criminal
statute, Colo. Rev. Stat. § 18-1.3-801 (2006), violates his right to jury trial

---

[2]State Court R., August 6, 2004 Hearing Tr. at 88-89.

12

> on the habitual criminal charges, for the reasons set forth in People v.
> Nunn, 148 P.3d 222, 225 (Colo. App. 2006); People v. Felder, 129 P.3d
> 1072, 1074 (Colo. App. 2005); People v. Benzor, 100 P.3d 542, 545
> (Colo. App. 2004); People v. Carrasco, 85 P.3d 580, 582 (Colo. App.
> 2003); and People v. Johnson, 74 P.3d 349, 355-56 (Colo. App. 2002).

*Rhodes I*, Pre-Answer Resp. Ex. D at 11.

In rejecting Petitioner's claim, the Colorado Court of Appeals relied on its own earlier panel decisions which applied the rule of *Apprendi* and its exception for prior convictions. The state appellate court's determination that Petitioner was not entitled to a jury trial on the habitual criminal charges was consistent with applicable Supreme Court law.

Petitioner also argues incorrectly that Colorado affords him a right to a jury trial on the habitual criminal charges and, therefore, his sentence is contrary to *Sullivan v. Louisiana*, 508 U.S. 275 (1993). Petition at 6a, Reply at 5-6. *Sullivan* held that the Fifth and Sixth Amendments require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged. *Sullivan*, 5080 U.S. at 277-78. However, *Sullivan* does not apply to prior criminal convictions. Moreover, contrary to Petitioner's assertion, Colo. Rev. Stat. § 18-1.3-803 (2010) does not confer a right to a jury trial on habitual criminal charges. And even if such a right inured to Petitioner under state law, it would not afford him a basis for federal habeas relief. *See Estelle v. McGuire*, 503 U.S. 62, 67-68 (1991)( "[F]ederal habeas corpus relief does not lie for errors of state law.").

Petitioner thus cannot prevail on his fourth claim.

### C.   Claim Five

Petitioner asserts in claim five that his Fourteenth Amendment due process rights were violated when the prosecutor and police withheld evidence of M.T.'s purported interview statements that Petitioner had permission to be in M.T.'s apartment. Petition at 6a.

Petitioner argued in a state post-conviction motion that he discovered several years after the burglary that victim M.T. gave statements to investigating police officer Christopher Poppe and the "Arapahoe County D.A." that menacing victim C.B. was responsible for causing the gun to go off in M.T.'s apartment and that M.T.'s remark to "get . . . out of his apartment" was directed to C.B.   State Court R., vol. 3 at 572-79. Petitioner attached to his motion an affidavit from Neshan Johnson, who stated that he "associated" with M.T. between May 30, 2004 and January 20, 2007.  *Id.*  at 580.  M.T. told Johnson that the "Arapahoe County D.A." tried to persuade M.T. to testify (falsely) at Petitioner's trial that Petitioner did not have permission to be in M.T.'s apartment.  *Id.* Johnson further states that M.T. told him that M.T. left Colorado and moved to Texas to avoid perjuring himself at trial.  *Id.* at 580-81.  Petitioner submitted a second affidavit from Petitioner's sister, Victoria Rhodes, who states that M.T. told her after the trial that he gave a statement to police officer Poppe that Petitioner had permission to be in his apartment, that C.B. grabbed Petitioner's gun and caused it to go off, and that M.T. told C.B. to get out of the apartment.  *Id.* at 582-83.  Ms. Rhodes further states that M.T. provided this information to a district attorney named "Peters" by telephone from Texas and told the prosecutor he was willing to fly back to Colorado to testify at Petitioner's

trial.  Peters said he would let him know if his testimony was needed, but never called

him back.  *Id.* at 583.

Prior to trial, the prosecutor learned that M.T. was living in Oklahoma and, at the

prosecution's request, the state trial court issued an order requesting that an Oklahoma

court order M.T. to travel to Colorado to testify at Petitioner's trial.  State Court R., vol.

3. at 192-97.  M.T. did not attend the trial.

An accused's due process rights are violated under *Brady v. Maryland*, 373 U.S.

83 (1963), when the prosecution suppresses material evidence that was favorable to

the accused as exculpatory or impeachment evidence.  See *Strickler  v. Greene,* 527

U.S. 263, 281-82 (1999).  Evidence is material if there is a reasonable probability that,

"had the evidence been disclosed to the defense, the result of the proceeding would

have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The Colorado Court of Appeals rejected Petitioner's *Brady* claim based

on the following reasoning:

> We first consider whether defendant is entitled to relief on his claim
> that his conviction was obtained in violation of *Brady* because the victim's
> testimony was deliberately suppressed by the prosecutor and the police,
> and conclude he is not.
>
> Defendant submitted affidavits prepared by his sister and a fellow
> inmate, Neshan Johnson, alleging that each of them talked with the victim
> after the trial.  Defendant's sister, on the one hand, stated in her affidavit
> that the victim said he told an investigating officer defendant had
> permission to be in his apartment, and he tried to attend the trial to testify,
> but the prosecutor never contacted him to attend.  Johnson, on the other
> hand, stated in his affidavit that the victim said he fled to Texas to avoid
> the prosecutor's persistent requests that he perjure himself by testifying
> that defendant did not have permission to be in his apartment.  Based on
> these affidavits, defendant argued that the prosecutor and police officers

15

deliberately suppressed and failed to disclose the victim's statements and produce him at trial, violating the defendant's rights pursuant to *Brady*.

Defendant contends the trial court erred by "completely ignoring" this claim because it addressed it as a newly discovered evidence claim rather than as a claim pursuant to *Brady*.  Even under *Brady*, defendants claim fails.

A defendant has a right under the Due Process Clause to all material exculpatory evidence in the actual or constructive possession of the prosecution.  *Brady*, 373 U.S. at 87; *People v. Braunthal*, 31 P.3d 167, 172 (Colo. 2001).  To establish a due process violation, a defendant must establish that (1) the evidence was suppressed or destroyed by state action; (2) the evidence had exculpatory value that was apparent before it was lost or destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means.  *Braunthal*, 31 P.3d at 173; *see People v. Greathouse*, 742 P.2d 334, 338 (Colo. 1987).  A reasonable probability is one sufficient to undermine judicial confidence in the outcome of the proceedings.  *People v. Bradley*, 25 P.3d 1271, 1276 (Colo. App. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Defendant testified at trial that he entered the victim's apartment when the victim opened the door.  When defendant pointed a gun at the victim, the victim told him to "get . . . out."  On direct appeal, a division of this court found this testimony sufficient to support defendant's conviction for burglary.  Hence, even if the accounts contained in the affidavits submitted by defendant had been added to the trial testimony, they would not have created a reasonable likelihood that he would have been acquitted of the burglary for entering the apartment and for remaining after the gun discharged.  Therefore, the trial court did not err in denying this claim without a hearing. [state law citations omitted].

*Rhodes II*, Pre-Answer Resp. Ex. L at 3-5.  The state appellate court erroneously cited the three-part test enunciated in *California v. Trombetta*, 467 U.S. 479, 488-89 (1984), for establishing a federal due process claim based on state destruction of the evidence, rather than to the *Brady* test.  However, both *Trombetta* and *Brady* require the defendant-petitioner to prove that the evidence in question was material to the defense.  Furthermore, the Colorado Court Appeals cited *Bagley* in discussing the standard for

materiality.  The Court therefore finds that the state appellate court applied the correct legal standard in resolving Petitioner's claim.

Before reaching the issue of materiality, the Court notes that Petitioner's claim that the prosecutor or police suppressed a witness statement is questionable at the outset.  Petitioner's affidavits in support of his motion for post-conviction relief contain inherently contradictory information – according to one account, witness M.T. is evading a prosecutor who is attempting to have M.T. perjure himself at Petitioner's trial, while in the other account, M.T. tells prosecutor Peters (presumably James Peters, the elected District Attorney of the 18th Judicial District) that he wants to testify, but the prosecutor does not call him back.  By contrast, the state trial court pleadings file indicates that the district attorney located M.T. in Oklahoma and sought to secure his presence at trial through the assistance of an Oklahoma state court; however, M.T. did not attend the trial.

Even assuming that the prosecution suppressed a statement by M.T. that Petitioner had permission to be in his apartment and that M.T. told C.B., not Petitioner, to "get . . . out," that evidence conflicts with Petitioner's own testimony that M.T. told *him* to "get . . . out" after Petitioner pulled a gun on M.T. and asked M.T. if that made him care about his sister's whereabouts.  The Court finds that the state appellate court's decision that the allegedly suppressed witness statements were not material was a reasonable application of *Brady* and was a reasonable determination of the facts in light of the evidence presented at trial.  Petitioner is not entitled to federal habeas relief for his fourth claim.

**D.     Claim  Six**

For his sixth claim, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of trial counsel when counsel: (a) failed to locate M.T. and secure his testimony at Petitioner's trial; (b) failed to prepare Petitioner for his trial testimony and thereby causing Petitioner to incriminate himself in response to counsel's questions; and, (c) committed cumulative errors which deprived Petitioner of a fair trial. Petition at 6a.

To prevail on his claim that trial counsel's assistance was constitutionally ineffective, Petitioner must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland,* 466 U.S. at 691.  Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Id*. at 693.  In evaluating prejudice, the Court considers the totality of the evidence before the jury.  *Id.* at 695.  The Court need not address both

prongs of the *Strickland* inquiry if the Court determines that Petitioner's claim fails on one. *Id.* at 697.

The state appellate court applied the *Strickland* standard in resolving Petitioner's claim. *See Rhodes II*, Pre-Answer Resp. at 5-6. Accordingly, the Court must determine whether the state court's application of the *Strickland* test comported with Supreme Court precedent.

## 1.   Counsel's failure to investigate

Petitioner first contends that trial counsel was constitutionally ineffective in failing to locate M.T. and secure M.T.'s testimony that Petitioner had permission to be in his apartment.

The Colorado Court of Appeals resolved this claim as follows:

> Defendant first contends that his trial counsel was ineffective because counsel failed to locate the victim and secure him to testify that defendant had permission to be in his apartment even after his gun discharged.
>
> However, even if counsel could have secured the victim to testify to that effect at trial, there is no reasonable probability the outcome of the proceedings would have been different in light of the defendant's own testimony that, when he pointed a gun at the victim, the victim told him to "get . . . out." *See Strickland*, 466 U.S. at 649; *Davis*, 871 P.2d at 772.
>
> Thus, the trial court properly denied this claim without a hearing. *See Ardolino*, 69 P.3d at 77.

*Rhodes II*, Pre-Answer Resp. Ex. L at 6-7.

The Court finds that state appellate court's determination of this claim is supported by the state court record, *see* July 39, 2003 Trial Tr. at 183-84, and is a reasonable application of the *Strickland* prejudice test. As discussed in the preceding

sections, the evidence at trial was sufficient to convict Petitioner of first degree burglary based on Petitioner's own testimony that he pulled out a gun, asked M.T. if he now cared about his sister's whereabouts, and then did not leave M.T.'s apartment immediately after M.T. told him to get out, but rather continued to struggle with C.B. for control of the gun.  Petitioner thus cannot prevail on his request for federal habeas relief.

### 2.    Inadequate preparation of Petitioner for trial testimony

Petitioner next contends that his trial counsel was ineffective in failing to prepare him to testify at trial and, as a result, Petitioner incriminated himself on direct examination in response to counsel's questions.  The Colorado Court of Appeals rejected this claim on the following grounds:

> Defendant next contends his trial counsel was ineffective for not preparing for trial adequately, which led to questioning defendant during trial in a manner that caused him to involuntarily incriminate himself by not clarifying that the victim's statement to "get . . . out" was directed at the menacing victim and not defendant.

> On direct examination, defendant testified as follows:

> [Defense Counsel:]  Did [the victim] appear to be intimidated by you?

> [Defendant:] When he say "get . . . out of my house."

> [Defense Counsel:]  At that point?

> [Defendant:] Yeah, at that point.

> [Defense Counsel:]  And was that after the shot was fired – when he told you to get out of his house, was that after the shot had been fired?

> [Defendant:]  That was before the shot.

[Defense Counsel:]  Were you able to get out of his house at that point when he said "get out of my house"?

[Defendant:]  No.

[Defense Counsel:]  Why not?

[Defendant:]  I didn't get out of his house at that point.

[Defense Counsel:]  When he said that, were you wrestling around with [the menacing victim] for the gun?

[Defendant:]  Yeah, I was wrestling around.

[Defense Counsel:]  And he was yelling, "get out of my house"?

[Defendant:]  Yeah.

[Defense Counsel:]   As soon as the gunshot went off and you took the gun away from [the menacing victim] –

[Defendant:]  Yes, we left.

Defendant's statement that the victim told him to "get . . . out" was not raised in his attorney's questions.  Thus, his trial counsel did not render substandard performance in a manner that caused defendant to involuntarily incriminate himself.

Accordingly, we affirm the denial of this claim without a hearing, although on grounds other than those relied on by the trial court. [state case law citations omitted].

*Rhodes II*, Pre-Answer Resp. Ex. L at 7-9.

The passage from the trial transcript quoted by the Colorado Court of Appeals

was preceded by the following exchange:

[Defense Counsel:]  Did you ever threaten anyone with a gun or with anything else before you got to [M.T.'s] house?

[Petitioner:]  No.

21

[Defense Counsel:]  When you pulled out the gun and asked, "Now does anybody give a f---- at about my sister," who was that directed to?

[Petitioner:]  Directed at [M.T.].

[Defense Counsel:]  Did [M.T.] appear to be intimidated by you?

State Court R., July 30, 2003 Trial Tr. at 183.

The colloquy between Petitioner and his trial counsel supports the Colorado Court of Appeals' determination that Petitioner's incriminating statement that M.T. told him to leave the apartment was not elicited by his trial counsel, but rather was volunteered by Petitioner.  As such, the statement was not the product of deficient attorney performance.  Trial counsel is not accountable for every unexpected statement that comes out of a client's mouth.  Moreover, counsel appeared to recognize the incriminating nature of Petitioner's statement vis-a-vis the burglary charge and attempted to rehabilitate Petitioner by asking questions whose answers suggested that Petitioner was unable to leave the apartment immediately because he was wrestling around with the menacing victim for the gun.  This was a reasonable trial strategy under the circumstances.  *See Boyd*, 179 F.3d at 914.  Petitioner essentially gave the same testimony on cross examination and failed to clarify that M.T.'s order to leave the house was directed at the menacing victim, rather than Petitioner.[3]   State Court R., July 30,

---

[3]Moreover, to the extent petitioner suggests that his attorney was ineffective for not preparing Petitioner to testify that "the statement was being addressed to C.B.," Traverse at 11, the argument is rejected.  The import of Petitioner's trial testimony is that M.T. told Petitioner to leave.  Petitioner does not claim that he misspoke.  *Cf.* Petition at 5 (stating, as a "supporting fact" for the first claim, that "victim then ordered Applicant out of the house").  As noted by the court in *United States v. Rabi*, 2004 WL 2060804, at *3 (S.D.N.Y. 2004) "[a]n attorney cannot be faulted for failing to assist a client in committing perjury."

2003 Trial Tr. at 189. Accordingly, the Court finds that the state appellate court's conclusion that Petitioner's incriminatory statements on direct examination were not the result of constitutionally deficient performance by trial counsel comports with *Strickland*. Petitioner is therefore not entitled to federal habeas relief for his claim.

### 3.    Trial counsel's errors constituted cumulative error which deprived Petitioner of a fair trial

Finally, Petitioner claims that trial counsel's multiple errors amounted to cumulative error which deprived him of a fair trial.  Petitioner raised this claim in the state courts as an independent claim, rather than as part of his ineffective assistance of counsel claim, and the state appellate court addressed it as such.  *See* Pre-Answer Resp. Ex. I at 9-10; *Rhodes II*, Pre-Answer Resp. Ex. L at 10.

In the federal habeas context, "[a] cumulative-error analysis aggregates all [constitutional] errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman,* 595 F.3d 1142, 1162 (10th Cir. 2010) (quoting *Brown*, 515 F.3d at 1097) (internal quotation marks omitted); *see also Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004).  However, the Supreme Court has never held that the aggregation of harmless constitutional errors can constitute a separate, reversible violation of the United States Constitution.  "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *House*, 527 F.3d at 1018.  In any event, as the state appellate court recognized, Petitioner's claim of cumulative error fails because each substantive claim of constitutional error is without merit.  *See Alverson,* 595 F.3d at 1162; *see also Rhodes II*, Pre-Answer Resp. Ex. L at 10.

Accordingly, it is ordered:

1.      Applicant Zachary C. Rhodes' Application For a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 is denied.

2.      No certificate of appealability will issue because Applicant has not made a

substantial showing of the denial of a constitutional right.

3.      This case is dismissed with prejudice.


DATED June 10, 2011.

BY THE COURT:


 s/Philip A. Brimmer                                    
PHILIP A. BRIMMER
United States District Judge